**PECKAR & ABRAMSON, P.C.**
70 Grand Avenue
River Edge, New Jersey 07661
(201) 343-3434
Kevin J. O'Connor, Esq.
Joseph Vento, Esq.
Attorneys for Plaintiff
Abacus Solutions Inc.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABACUS SOLUTIONS INC., <br><br> Plaintiff, <br><br> vs. <br><br> PSEG SERVICES CORPORATION, <br><br> Defendant. | Case No. 2:17-cv-782 <br><br><br> **COMPLAINT** <br> **AND JURY DEMAND** |

Plaintiff, Abacus Solutions Inc. ("Plaintiff"), by and through its undersigned counsel, Peckar & Abramson, P.C., by way of Complaint against Defendant, PSEG Services Corporation ("Defendant"), states as follows:

### PRELIMINARY STATEMENT

1. This is an action for breach of contract and breach of the implied covenant of good faith and fair dealing, stemming from Defendant's blatant violations of an End-User License Agreement ("Agreement") with Plaintiff. As demonstrated below, Defendant breached its contract with Plaintiff wherein Plaintiff entrusted Defendant with valuable, non-exclusive license rights to use Plaintiff's proprietary software platform in its business operations. Defendant gave an invalid notice of termination of the contract; failed to pay monies due and owing under the Agreement; and continued to use the software in direct

1

violation of the parties' agreement and applicable law.  Defendant's actions entitle Plaintiff to damages, costs and attorneys' fees, as allowed under the express terms of the Agreement.

## THE PARTIES

2. Plaintiff is and has at all relevant times been a California corporation with a place of business at 24704 Voorhees Drive, Los Altos Hills, California 94022.

3. Defendant is and has at all relevant times been a New Jersey corporation with a place of business at 80 Park Plaza, Newark, New Jersey 07102.

## JURISDICTION

4. This Court has proper jurisdiction over this matter on grounds of diversity of citizenship pursuant to 28 U.S.C. §1332, because the dispute is between residents of different states and the amount in controversy exceeds $75,000.00.

5. This Court has personal jurisdiction over Defendant because it committed certain acts within this District.  In addition, Defendant engaged in commercial transactions taking place in New Jersey and Defendant's conduct in those transactions is the subject of this action.

6. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in New Jersey.

## FACTUAL BACKGROUND COMMON AS TO ALL COUNTS

A. **Background on SATURN Software.**

7. Plaintiff Abacus Solutions Inc. ("Plaintiff") is the developer of SATURN, an integrated enterprise ETRM system (front, mid, back office) with decision support capabilities and additional unique tools that offer solutions to key business functions.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

8. SATURN is an enterprise business management system that integrates multiple corporate applications. It facilitates improved decisions and helps analyze corporate and functional risks, revenues, costs and profits for a portfolio of plants, trades and other assets.

9. Using modern technology, SATURN helps users such as Defendant realize significant financial benefits and gain unique and sustainable competitive advantages in the marketplace through various applications including but not limited to Market Prices Import, Correlation Factors Updates, and Simulation Parameters Updates.

B. **The Parties' Signing of the Agreement and Relevant Provisions Thereof.**

10. On or about February 28, 2008, Plaintiff and Defendant executed the End-User License Agreement ("the Agreement").

11. In the Agreement, Defendant represented that it "has a critical business need for certain enterprise integration and risk management solutions in its various business units, including its Energy Resources and Trading business (carried on in Licensee's affiliate 'PSEG Energy Resources & Trading, LLC)." (Agreement, Recital A).

12. Defendant recognized that its use of Plaintiff's proprietary and copyrighted SATURN software would serve to provide "functionality with respect to integrating energy trading, generation modeling, data retention, data mining and related informational analytics, models, reports, scenario analysis, and stress testing, and other risk management tools and related features that meet certain aspects of Licensee's critical business needs." (Id., Recital C).

13. The Agreement provided Defendant with a perpetual, nonexclusive, irrevocable upon receipt of payment by Plaintiff, nontransferable right and license to have the

3

SATURN program on Defendant's computer systems, and to use and execute such Licensed Work within the terms of the Agreement.

14. Section 2.4 of the Agreement provides that "[a]ccess and use of the Licensed Work is limited to employees of Licensee and contractors who have a signed written agreement with Licensee to abide by the terms of this Agreement provided that the Licensee will take all reasonable measures to ensure that no party or person that is a competitor of the Licensor will be given access to or use the Software."  (Id., § 2.4).

15. The Agreement recognized that maintenance and support services would be required from time to time.  Such services were continuously provided by Plaintiff.

16. Section 2.9 of the Agreement provides Plaintiff with a right to audit Defendant's use of the Licensed Work, upon notice to Defendant.

17. Section 3.1 of the Agreement provides that "[t]itle to the Licensed Work, including all copies and Derivative Works thereof, shall be in and remain with Licensor."

18. Section 1.5 of the Agreement provides that "Intellectual Property Rights means any and all state, national or worldwide rights existing under letters patent and applications for letters patent and similar laws, trademarks, or services marks, copyright and rights of authorship, semiconductor protection law, trade secrets law, and any other rights generally described as an intellectual property right or industrial property right."

19. Defendant acknowledged in the Agreement that the Licensed Work "contains substantial intellectual property belonging to Licensor" and agreed that it "shall employ reasonable security precautions to maintain the confidentiality of such intellectual property." (Id., § 3.2).

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

20. Defendant agreed to limit access to such intellectual property to only those employees with a need to know, and expressly agreed that any such access be premised on such employee acknowledging in writing a need to strictly adhere to the confidentiality provisions in the Agreement. (Id.) Defendant expressly agreed to ensure that no competitor of Plaintiff be granted access to such intellectual property. (Id.)

21. Article 8 of the Agreement provides that the Agreement would entail the continued flow of confidential information to Defendant "in connection with an evolving business relationship between the Parties involving the Licensed Work and/or other business transactions (herein individually and collectively referred to as the "Relationship")." (Id., § 8.1).

22. Under Section 8.3 of the Agreement, Defendant agreed to maintain in strict confidentiality all Confidential Information provided to it; to ensure that any Receiving Party given access to such Confidential Information abide by the Agreement; and to ensure that any person or entity given access shall not be a competitor of Plaintiff. (Id., ¶ 8.3).

23. Section 8.4 provides that Confidential Information includes but is not limited to "all documents, models, analyses, data of any kind, drawings, sketches, plans, specifications, customer lists and/or data, designs, techniques, algorithms, solution approaches, processes, inventions, parts, components, computer programs, coding, source code, object code, executable code, systems, maps, product plans, product pricing structure, and other information of a Delivering Party whether disclosed orally, visually, in writing or by means of any other media, which is disclosed in a manner such that a reasonable person would understand the nature and confidentiality of the information, concerning or relating to such Delivering Party's business plans."

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

5

24. Section 8.7 provides that Defendant shall be responsible for any breach of such confidentiality provisions by it or its "employees, agents, affiliates or contractors" and agreed to take "all reasonable measures (including but not limited to court proceedings) to restrain their respective employees, agents, affiliates or contractors from prohibited or unauthorized disclosure or use of the Confidential Information," and at its sole expense. (Id., § 8.7).

25. Section 8.9 provides that if Defendant breached its confidentiality obligations, Plaintiff would be entitled to an injunction retraining any further use of such Confidential Information, "without proof of damages or the need to post bond or any other surety." (Id., § 8.9).

26. Pursuant to Section 9.2, the "terms and conditions of [the] Agreement shall remain in effect for so long as Licensee installs and executes the Licensed Work on [its] system or otherwise makes any use of the Licensed Work." (Id., ¶ 9.2). The Agreement further specifies that references to "Licensee" shall be construed as including "any parent or Affiliate of such parent" of Defendant.

27. The Agreement incorporates by reference Defendant's "Standards of Integrity" id., § 9.6), which provide the following instructions to PSEG employees utilizing Plaintiff's software:

> "PSEG licenses or rents the intellectual property of others.  You must respect the intellectual property of others and comply with any applicable laws or agreements signed by PSEG…"  (PSEG Standards of Integrity, at 31).

28. The Agreement states in Section 9.4 that it shall be governed by New York law.

6

29. The Agreement states in Section 9.5 that it contains all agreements of the parties that that it "may not be amended or modified except in a written agreement signed by both parties." (Id., § 9.5). This is repeated again in Section 9.7 which explicitly states that "EXCEPT FOR SEPARATE WRITTEN AGREEMENTS BETWEEN LICENSOR AND LICENSEE, THIS AGREEMENT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE RIGHTS AND RESPONSIBILITIES OF THE PARTIES." (Id., § 9.7).

30. Article 4 of the Agreement requires Defendant to pay licensing fees to Plaintiff in the amount set forth in Schedule C thereto.

31. Defendant was provided only a limited right to termination upon each annual renewal. Upon annual renewal each year effective September 15th of each year, Defendant was granted a period of not more than thirty (30) days "to either renew or terminate the Agreement." (Id., Sched. C, § 3). The Agreement expressly states that if Defendant fails to terminate within that thirty (30) day window, then "[a]ny renewal will be in effect for a 12-month period starting January 1 and ending December 31 of the following year unless terminated in writing by Licensee" as noted above. (Id.).

32. The Agreement required Defendant to pay licensing fees quarterly, in advance. (Id., Sched. C, ¶ 4).

33. Schedule C of the Agreement further provides for an annual license fee of $275,000 for 2008, with a cap of 5% increase for the first five (5) years of the parties' contract, through December 31, 2013. (Id., Sched. C, ¶ 2).

34. Section 4.2 of the Agreement provides that if Defendant failed to pay licensing fees, a monthly finance charge of 1.5% of the outstanding balance would accrue on

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

7

any unpaid balance, and that Plaintiff shall be entitled to reasonable attorneys' fees and cost of collection in collecting on any past due amounts.  (Id., § 4.2).

C. **The Parties' Long-Standing Relationship Pursuant to the Agreement.**

35. Within months of using SATURN, Defendant reported its great satisfaction with the software.  Indeed, senior level PSEG employee Steven Oster provided a testimonial for Plaintiff's marketing efforts that "SATURN enables enterprise risk management with an unprecedented mix of analytics, ease and speed".

36. During the period of 2008 through March 2016, Plaintiff and Defendant worked closely and successfully with each other.

37. During that period, Defendant continuously paid licensing fees without objection.

38. The annual fee for the period January 1, 2016 through December 31, 2016, was and is $382,000.

39. For calendar year 2016, Defendant only paid the sum of $95,500, leaving a balance due and owing of $286,500, exclusive of late fees which have continued to accrue at 1.5% per month pursuant to Section 4.2 of the Agreement.

D. **Defendant's Breach of the License Agreement and Continued Use of SATURN.**

40. Defendant's promises of integrity and business ethics proved empty, as shown by its outrageous conduct in connection with its purported "termination" of the Agreement on March 31, 2016.

41. On that date, Defendant's John Strong wrote to state that Defendant

> "is terminating the subject end-user agreement for convenience effective March 31, 2016.  Consistent with the Agreement, PSEG Services shall destroy the Source Code and functional and technical architecture documents within one year of the effective termination date."

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

8

42. Defendant emailed the letter to Plaintiff on March 31, 2016, the purported "effective date" of the improper "termination."

43. Not content with having blatantly violated the Agreement by sending an untimely "notice of termination for convenience," and having failed to pay licensing fees for the balance of 2016 as required by the parties' Agreement, Plaintiff would soon obtain concrete proof that Defendant was continuing to use the proprietary SATURN software in its business.

44. By way of example, Plaintiff received several SATURN email notifications for several days after the so called "termination" that key SATURN applications had continued to be processed on Defendant's hardware including Market Prices Import, Correlation Factors Updates, and Simulation Parameters Updates.

45. Upon information and belief, Defendant has violated the Confidentiality clauses of the Agreement by discussing aspects of the software with Plaintiff' competitors and other companies outside Defendant. Defendant's actions were in direct violation of the terms of the Agreement, thereby damaging Plaintiff and entitling Plaintiff to damages, injunctive relief, attorneys' fees and costs of suit.

46. Additionally, Plaintiff has reason to believe that Defendant granted access to Confidential Information to contractors, and possibly employees, of Defendant and its parent and/or affiliates, without properly safeguarding such materials per the terms of the Agreement, allowing such contractors and employees to leave Defendant's employment to the marketplace without needed safeguards, in direct violation of the Agreement.

47. On December 20, 2016, Plaintiff, through counsel, wrote to Defendant and sought payment of the overdue licensing fees, a certification from Defendant that it had taken

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

action to properly secure and protect Plaintiff's Confidential Information, requested written proofs that each of its Contractors has compiled with the terms of the Agreement, and also requested an audit.

48. By way of letter dated January 11, 2017, Defendant wrote and stated that it would not pay such licensing fees, would not provide such assurances, would not provide written proofs that each of its Contractors has compiled with the terms of the Agreement, and would not allow an audit.

49. As of the date of this complaint, Defendant owes Plaintiff the sum of $286,500 plus late fees which continue to accrue at 1.5%, plus damages for its abject breach of the Agreement, plus attorneys' fees and costs as expressly allowed under the Agreement.

### COUNT ONE
### (Breach of Contract)

50. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 49 hereof as if fully set forth herein.

51. This is an action for breach of contract.

52. Plaintiff has performed all of its duties and obligations to Defendant under the Agreement.

53. Commencing as early as March 2016 or perhaps earlier as may be shown through discovery, Defendant breached the Agreement by, *inter alia*:

(a) Conspiring to steal Plaintiff's Confidential Information and Intellectual Property by working to replace Plaintiff's proprietary system and migrate Defendant operations onto a new system;

(b) Conspiring to unlawfully "terminate" the Agreement despite the express terms of said Agreement, and refusing to pay licensing fees, all the while continuing to use the SATURN system;

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

 (c) Granting access to Confidential Information to persons who had no legitimate business need or right, and failing to safeguard such Confidential Information; and

 (d) Failing and refusing to give Plaintiff an audit of the systems in use at Defendant's business.

54. Defendant is liable to Plaintiff for its breaches.

55. As a direct and proximate result of Defendant's breaches of the Agreement, Plaintiff has suffered damages and continues to suffer irreparable harm and is entitled to damages to be proven at trial, together with pre-judgment interest and costs, attorneys' fees as provided in the Agreement, and appropriate injunctive relief.

**WHEREFORE** Plaintiff demands judgment against Defendant for all damages, interest, costs of suit, attorneys' fees and such other relief as this Court deems just and proper.

## COUNT II
### (Breach Of Covenant Of Good Faith And Fair Dealing)

56. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 49 hereof as if fully set forth herein at length.

57. Under New York law, a covenant of good faith and fair dealing is recognized as implicit in any contract whereby propriety software rights are licensed to an end user such as Defendant.

58. The actions of Defendant, as set forth above, constitute a breach of the implied covenant of good faith and fair dealing with Plaintiff with respect to the parties' Agreement.

59. By withholding material information from Plaintiff and/or making material misrepresentations, failing to make quarterly payments in advance, stealing Plaintiff's Intellectual Property while working to replace Plaintiff's system, and springing a "termination

for convenience" on Plaintiff all the while continuing to use the SATURN system, Defendant acted in bad faith and enriched itself through deceitful tactics thus violating the implied covenant of good faith and fair dealing.

**WHEREFORE** Plaintiff demands judgment against Defendant for all damages, interest, costs of suit, attorneys' fees and such other relief as this Court deems just and proper.

### COUNT THREE
### (Conversion)

60. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 49 hereof as if fully set forth at length herein.

61. Defendant's conduct as alleged herein has resulted in unlawful and wrongful assumption of control over, and conversion of, Plaintiff's property and/or Confidential Information as defined in the Agreement and at common law.

62. Plaintiff has the right to recover possession of its property and/or Confidential Information.

63. Defendant has failed to return Plaintiff's property and/or Confidential Information, despite lawful demand.

64. As a consequence of the foregoing conduct, Plaintiff has been injured, for which it is entitled to recover damages and interest in an amount as the proof at trial may warrant, together with punitive damages in an amount as proof at trial may warrant.

**WHEREFORE** Plaintiff demands judgment against Defendant for all damages, interest, costs of suit, attorneys' fees and such other relief as this Court deems just and proper.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

## COUNT FOUR
## (Misappropriation)

65. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 49 hereof as if fully set forth at length herein.

66. Defendant intentionally and wrongfully misappropriated Plaintiff's property including, *inter alia*, its proprietary and confidential business information, for the benefit of itself and its vendor(s), to Plaintiff's detriment.

67. Plaintiff took reasonable steps to protect and maintain the secrecy of its proprietary and confidential business information.

68. Defendant has failed to return Plaintiff's property despite its demand and its clear obligations to Plaintiff.

69. As a result of the intentional and wrongful conduct of Defendant, Plaintiff has been injured, for which it is entitled to recover damages and interest in an amount as the proof at trial may at warrant, together with punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered in its favor and against Defendant for relief as follows:

(A) Compensatory damages in an amount to be determined at trial;

(B) Punitive damages in an amount to be determined at trial,

(C) Payment of attorneys' fees and costs;

(D) Preliminary and permanent injunctive relief as set forth above;

(E) Pre- and post-judgment interest as allowed by law; and

(F) All other and further relief, at law or in equity, as this Court may deem just and proper.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

                                                **PECKAR & ABRAMSON, P.C.**
                                                Attorneys for Plaintiff

                                                /s/ Kevin J. O'Connor

Dated:  February 7, 2017        By:  _____
                                                             KEVIN J. O'CONNOR

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

14

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and Civ. R. 38(1), Plaintiff demands a trial by jury on all issues so triable.

                                      **PECKAR & ABRAMSON, P.C.**
                                      Attorneys for Plaintiff

                                        /s/ Kevin J. O'Connor

                          By:    _____
Dated:  February 7, 2017                    Kevin J. O'Connor